IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
PORTLAND DIVISION

**WILLIS G. BLAIR,**

       Plaintiff,

       v.

**BANK OF AMERICA, N.A., a national
banking association; BAC HOME
LOANS, a division of BANK OF AMERICA,
N.A.; CITIBANK (SOUTH DAKOTA), N.A.,
a national banking association;
SEARS CARD SERVICES, a division of
CITIBANK, N.A.; SMITH & GREAVES,
LLP, an Oregon Limited Partnership; and
NORTHLAND GROUP INC., a Minnesota
corporation,**

       Defendants.

Case No. 10-cv-946-SI

**OPINION AND ORDER**

Bonnie Marino-Blair
4400 N.E. 77th Avenue, Suite 275
Vancouver, Washington 98662
       Attorneys for Plaintiff

John A. Cochran
3403 S.E. 45th Avenue
Portland, Oregon 97206
       Attorneys for Plaintiff

Pilar C. French
Dominic G. Colletta
Lane Powell PC
601 S.W. Second Avenue, Suite 2100
Portland, Oregon 97204
 Attorneys for Defendants Bank of America, N.A. and BAC Home Loans, LP

Kathryn P. Salyer
Farleigh Wada Witt
121 S.W. Morrison Street, Suite 600
Portland, Oregon 97204
 Attorneys for Defendants Citibank, N.A. and Sears Card Services

Frank H. Lagesen
Cosgrave Vergeer Kester LLP
805 S.W. Broadway, 8th Floor
Portland, Oregon 97205
 Attorneys for Defendant Smith & Greaves, LLP

**SIMON, District Judge.**

 In this action, Plaintiff, Willis G. Blair, asserts claims against Bank of America, N.A. ("BofA") and BAC Home Loans ("BAC") (collectively, "the BofA Defendants"); Citibank (South Dakota), N.A. and Sears Card Services (collectively, "the Citibank defendants"); Smith and Greaves, LLP ("S&G"); and Northland Group, Inc. ("Northland"). Plaintiff alleges that his residential mortgages were serviced by the BofA Defendants and that he owed credit card obligations to the Citibank Defendants. Plaintiff alleges that S&G, a law firm, provided collection services on behalf of the Citibank Defendants and that Northland also provided collection services on behalf of the Citibank Defendants. In his First Amended Complaint ("FAC"), Plaintiff alleges disability discrimination; defamation; violation of home mortgage, credit, and debt collection statutes; invasion of privacy; and breach of the implied contractual covenant of good faith and fair dealing.

Opinion and Order, Page 2

In response to Plaintiff's original Complaint, all Defendants other than Northland[1] filed motions to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim. (Dkts. 5, 30, 34, and 36.) Before the court ruled on the merits of these motions, Plaintiff sought leave to amend his complaint. (Dkt. 49.) The court granted Plaintiff's motion to amend and denied Defendants' motions to dismiss without prejudice and with leave to renew. (Dkt. 63). Plaintiff then filed his FAC. The Citibank Defendants filed a Motion to Dismiss the FAC (Dkt. 65), followed by an Amended Motion to Dismiss (Dkt. 66). Defendant S&G filed a Motion for Summary Judgment against the FAC (Dkt. 67), and the BofA Defendants filed a Motion to Dismiss the FAC. (Dkt. 70.)

For the reasons stated below: (1) the Citibank Defendants' Motion to Dismiss [65] is DENIED as moot; (2) the Citibank Defendants' Amended Motion to Dismiss [66] is GRANTED IN PART and DENIED IN PART, resulting in the dismissal with prejudice of all claims asserted by Plaintiff against the Citibank Defendants except for defamation and violation of the Oregon Unlawful Debt Collection Practices Act; (3) Defendant S&G's Motion for Summary Judgment [67] is GRANTED; and the BofA Defendants' Motion to Dismiss [70] is GRANTED. In addition, if Defendant Northland has not entered an appearance by April 30, 2012, and if Plaintiff has not moved for default against Northland by that date, the court will dismiss all claims against Northland without prejudice for want of prosecution.

---

[1] A waiver of service of summons was returned signed by Wayne Cody, registered agent for Northland, on November 29, 2010. (Dkt. 17.) In addition, a summons was issued to Northland on March 2, 2012. (Dkt. 90.) Defendant Northland has not yet entered an appearance.

## I. PLAINTIFF'S ALLEGATIONS

As alleged by Plaintiff in his FAC, the BofA Defendants acquired from Countrywide the servicing of two mortgage loans for which Plaintiff was the mortgagor. FAC at ¶ 5.5. Plaintiff was also a borrower on Citicard and Sears credit card accounts. *Id.* at ¶ 5.6. Plaintiff alleges that he suffers from chronic physical disabilities, including seizure disorder, Type I diabetes, and complications of diabetes including neuropathy, eye problems, skin infections, and pneumonia. *Id.* at ¶ 5.1.

Plaintiff further alleges that the BofA and Citibank Defendants were the recipients of federal funds pursuant to the Emergency Economic Stabilization Act of 2008, 12 U.S.C. §§ 5201 *et seq.,* as amended by the American Recovery and Reinvestment Act of 2009, which together created a federal program under which the United States Treasury invested approximately $245 billion in financial institutions and guaranteed certain of their assets. *Id.* at ¶¶ 5.3, 5.4. "By their own assurances to the American public, Congress, the Treasury and the Congressional Oversight Program," the BofA and Citibank Defendants had "a variety of forbearance programs" and "support for credit card holders" allocated from these federal funds, including the Home Affordable Modification Program ("HAMP") designed to help homeowners modify home mortgages. *Id.* at ¶¶ 6.4, 6.5, 6.10, 6.17, Ex. 3, p. 23.

Plaintiff alleges that between July 2009 and early 2010, he was "unable to work his normal schedule" because of health problems. *Id.* at ¶ 14.6. From "late 2009 to about July of 2010," Plaintiff contacted the BofA Defendants and the Citibank Defendants to tell them he was "[a]nticipating reduction in income and increased medical expense," that he was disabled, and that he needed a temporary extension or modification of his loan terms. *Id.* at ¶ 6.8. Plaintiff

claims that the BofA and Citibank Defendants discriminated against him "on the basis of disability or on the basis of exercising of rights under the Consumer Credit Protection Act" by taking adverse action against him after he "disclosed his disabilities and medical conditions" and that they did so by denying "credit extension" after Plaintiff made a "good faith exercise of rights under the Consumer Credit Protection Act." *Id.* at ¶¶ 14.7-14.8.

Plaintiff asserts the BofA Defendants and the Citibank Defendants refused Plaintiff's requests to renegotiate or modify the terms of his loans. *Id.* at ¶¶ 6.8, 6.10, 6.11, 6.12. Plaintiff adds that all Defendants raised the interest rates on his loans, allegedly causing other lenders to increase their interest rates and deny Plaintiff access to capital, thereby further exacerbating his physical disability. *Id.* ¶¶ 6.18, 6.19. Plaintiff also alleges that after he requested participation in Citibank's credit card debt relief programs, those Defendants retaliated against him by assigning his accounts to collection agencies. *Id.* at ¶ 8.3.

Plaintiff asserts that he was, except for his disabilities, "otherwise qualified" for forbearance, modifications, and participation in the programs because "[p]rior to defendants' actions," Plaintiff had high credit scores and more than $1.5 million in available credit. *Id.* at ¶ 6.15. After Plaintiff asked Defendants for inclusion in their forbearance programs, they made defamatory communications about him, including: (1) Defendant BAC "asserted on a speaker phone in a call to Dr. Blair's office that his loan was 'in bankruptcy';" (2) despite receiving notice of a dispute from Plaintiff, BAC failed to reinvestigate and correct the disputed information; (3) the Citibank Defendants failed to investigate a disputed account, despite admitting in July 2010 that the current credit card statement was incorrect because they had reported the accounts "closed by cardholder;" (4) Plaintiff disputed an Experian credit report

entry by BAC that he made a late payment in May 2010, but as of 2010 BofA was still asserting

incorrect information; (5) the Citibank Defendants asserted that Dr. Blair was in bankruptcy and

transmitted that information to S&G; and (6) the Citibank Defendants communicated to

Northland on or about July 2010 that Plaintiff would likely attempt to evade service of process.

*Id.* at ¶ 9.2. Plaintiff asserts that these communications were made with the intent to injure him

"and/or in retaliation for Dr. Willis G. Blair's assertion that his civil rights were being violated."

*Id.* at ¶ 9.4. Plaintiff adds that the Citibank Defendants and S & G "further impaired [Plaintiff's]

credit worthiness by doing frequent, unwarranted credit inquiries," thereby lowering his credit

score. *Id.* at ¶ 10.11.

Based on these allegations, Plaintiff asserts the following twelve: (1) violation of the

Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 (Title II) and § 12181 (Title III),

including retaliation (against BofA and Citibank Defendants); (2) violation of § 504 of the

Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794, including relaliation (against BofA

and Citibank Defendants); (3) defamation (against BofA and Citibank Defendants); (4) violation

of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681s-2(a) and (b) (against all

Defendants); (5) violation of the Fair Debt Collection Practices Act ("FDCPA", 15 U.S.C.

§ 1692 *et seq.*(against all Defendants); (6) violation of the Oregon Unlawful Debt Collection

Practices Act ("UDCPA"), Or. Rev. Stat. § 646.639 *et seq.*(against all Defendants); (7) violation

of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.* and "Regulation Z," 12 C.F.R.

§§ 226.6, 226.9 (against Citibank Defendants); (8) violation of the Equal Credit Opportunity Act

("ECOA"), 15 U.S.C. § 1691 (against BofA and Citibank Defendants); (9) violation of the

Homeowners Protection Act ("HPA"), 12 U.S.C. § 4902(a) (against BofA Defendants); (10)

invasion of privacy (against all Defendants); (11) violation of the 2009 Credit Card

Accountability Responsibility and Disclosure Act ("Credit CARD Act") amendments to TILA,

15 U.S.C. § 1637(I) (against Citibank Defendants); and (12) breach of the implied covenant of

good faith and fair dealing (against BofA and Citibank Defendants).

## II.  STANDARDS

A motion to dismiss under  Rule 12(b)(6) of the Federal Rules of Civil Procedure for

failure to state a claim upon which relief can be granted "tests the legal sufficiency of a claim."

*Conservation Force v. Salazar,* 646 F.3d 1240, 1242 (9th Cir. 2011). Dismissal for failure to state

a claim is proper if there is a "lack of a cognizable legal theory or the absence of sufficient facts

alleged under a cognizable legal theory." *Id. See also Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

570 (2007) (to survive a motion to dismiss, the complaint must have sufficient facts to state a

facially plausible claim to relief). In deciding a motion under Rule 12(b)(6), the court applies

two principles: first, the court accepts as true all well-pled factual allegations in the complaint.

Second, the factual allegations must be sufficient to raise a right to relief above the speculative

level. *Ashcroft v. Iqbal*, 556 U.S.662, 129 S.Ct. 1937, 1949-50 (2009); *see also Nw. Envtl. Def.*

*Ctr. v. Brown*, 640 F.3d 1063, 1070 (9th Cir. 2011) (court accepts as true all material allegations

in the complaint, as well as any reasonable inferences to be drawn from them).

A party is entitled to summary judgment "if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.

R. Civ. P. 56(a). On a motion for summary judgment, the court must view the evidence in the

light most favorable to the non-movant and must draw all reasonable inferences in the non-

movant's favor. *Clicks Billiards Inc. v. Sixshooters Inc.,* 251 F.3d 1252, 1257 (9th Cir. 2001). The

Opinion and Order, Page 7

court may not make credibility determinations, weigh the evidence, or draw inferences from the facts. *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 150 (2000); *Davis v. Team Elec. Co.,* 520 F.3d 1080, 1088 (9th Cir. 2008) (on summary judgment, court does not weigh the evidence or determine whether the plaintiff's allegations are true). Summary judgment is not appropriate if a reasonable jury viewing could find by a preponderance of the evidence that the plaintiff is entitled to a verdict in his or her favor. *Davis,* 520 F.3d at 1089, *citing Cornwell v. Electra Cent. Credit Union,* 439 F.3d 1018,1027-28 (9th Cir. 2006).

### III.  DISCUSSION

**A.     Plaintiff's First and Second Claims: Disability Discrimination (ADA and § 504)**

Title II of the ADA concerns "public services" and provides in relevant part:

> No qualified individual with a disability shall, by reason of such
> disability, be excluded from participation in or be denied the
> benefits of the services, programs, or activities of a public entity,
> or be subjected to discrimination by any such entity.

42 U.S.C. § 12132. Title II's definition section states that "public entity" includes "any State or local government," and "any department, agency, [or] special purpose district." 42 U.S.C. § 12131(a)(A), (B). *See also Tennessee v. Lane,* 541 U.S. 509, 517 (2004) (Title II of the ADA defines the term "public entity" to include state and local governments, as well as their agencies and instrumentalities).

Section 504 of the Rehabilitation Act provides in relevant part:

> No otherwise qualified handicapped individual in the United States
> ... shall, solely by reason of his handicap, be excluded from
> participation in, be denied the benefits of, or be subjected to
> discrimination under any program or activity receiving Federal
> financial assistance....

29 U.S.C. § 794. A "program or activity" means all of the operations of:  (1) a department,

agency, special purpose district, or other instrumentality of a state or local government; (2) the entity of such state or local government that distributes such assistance and each such department or agency that receives it; (3) a college, university, other post-secondary institution, public system of higher education, or local educational agency; or (4) an entire corporation, partnership, or other private organization, or an entire sole proprietorship, if federal assistance is extended to the entity "as a whole," or if the private entity is "principally engaged in the business of providing education, health care, housing, social services, or parks and recreation." 29 U.S.C. § 794 (b)(1)-(4).  Thus, § 504 applies to both public and some private entities if they receive federal subsidies. *Zimmerman v. Or. Dep't of Justice,* 170 F.3d 1169, 1180 (9th Cir. 1999).

Cases interpreting Title II of the ADA and § 504 are "interchangeable." *Douglas v. Cal. Dep't of Youth Auth.*, 285 F.3d 1226, 1229-30 (9th Cir. 2002). To make out a prima facie case under either statute, the plaintiff must show that he is:  (1) a disabled person under the Act; (2) otherwise qualified for the program or activity; and (3) excluded from the program or activity solely by reason of the disability. *Mustafa v. Clark Cnty. Sch. Dist.,* 157 F.3d 1169, 1174 (9th Cir. 1998) (§ 504);   *Weinreich v. Los Angeles Cnty. Metro. Transp. Auth.*, 114 F.3d 976, 978-79 (9th Cir. 1997) (ADA). Persons with disabilities are "qualified" if they, "with or without reasonable modifications to rules, policies, or practices," meet "the essential eligibility requirements" for receipt of the services or participation in the programs or activities provided by the public entity. 42 U.S.C. § 12131(2); *Lane,* 541 U.S. at 517.

The BofA and Citibank Defendants challenge Plaintiff's ADA Title II and § 504 claims on the ground that neither set of Defendants receives "federal financial assistance," and, even if they did, they are legally distinct affiliates or subsidiaries of private corporations that satisfy

neither of the requirements of Title II or § 504; specifically, these Defendants asserts that they are not private entities receiving assistance "as a whole" or entities principally engaged in providing education, health care, housing, social services, or parks and recreation.[2]  In addition, these Defendants argue that even if Plaintiff had alleged that they constitute corporations receiving federal subsidies "as a whole," Plaintiff still has not alleged sufficient facts to make out a prima facie case under either Title II or § 504. Defendants argue that they never excluded Plaintiff from any program "solely on the basis of his disability" and that Plaintiff provides nothing but conclusory allegations. The court finds these arguments persuasive. Plaintiff's claims under Title II of the ADA and § 504 of the Rehabilitation Act are dismissed with prejudice.

In addition, Title III, the "public accommodations" title of the ADA, provides:

> No individual shall be discriminated against on the basis of disability in the full enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a).  Although a "bank" is included in the definition of places of public

---

[2]The Citibank Defendants acknowledge that Plaintiff has alleged Citibank Inc., Citibank's parent, was the recipient of "federal funds" under the Treasury Department's Troubled Asset Relief Program ("TARP") and that Citibank N.A. was the recipient of "federal funds" through various home loan assistance programs. The Citibank Defendants argue, however, that even if a claim could be predicated on Citibank's receipt of TARP funds, such a claim would be untimely because Citibank repaid the TARP funds in December 2009, before the conduct alleged in Plaintiff's complaint, citing *Jacobson v. Delta Airlines, Inc.*, 742 F.2d 1201, 1210 (9th Cir. 1984) (noting that defendant "was not receiving such a subsidy at the time the discrimination against plaintiff allegedly occurred).

accommodation, 42 U.S.C. § 12181(7)(F), it is included among other "service establishments," such as barber shops, funeral parlors, gas stations, professional offices, gymnasiums, and hospitals. A "place of public accommodation" under Title III must be a physical place that is connected to the goods or services being provided. *Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1114 (9th Cir. 2000). Plaintiff has not alleged either that forbearance from collecting past due payments or that providing loan modifications was a service provided by the Defendants or that those services were connected to "an actual physical place." *Id.* (dispute over terms of a contract that insurer marketed through an employer was not what Congress addressed in public accommodations provisions).

Title III also does not require the provision of different services to people with disabilities, only that "nondiscriminatory enjoyment of those that are provided." *Arizona ex rel. Goddard v. Harkins Amusement Enter., Inc.*, 603 F.3d 666, 671 (9th Cir. 2010). "There is no discrimination under the Act where disabled individuals are given the same opportunity as everyone else." *Id.* Plaintiff has not alleged that he was denied services in a physical place. Plaintiff also has not alleged that he was denied services, as that term is properly understood in this statute, that were provided to others but not provided to him because of his disability. Thus, Plaintiff's claim under Title III of the ADA is dismissed with prejudice.

**B.      Plaintiff's Third Claim:  Defamation**

       **1.      Preemption**

The BofA and Citibank Defendants move to dismiss Plaintiff's third claim, alleging defamation, on several grounds.  First, Defendants argue that Plaintiff's common law tort claims are preempted by two provisions of the FCRA that restrict state law claims asserted against

persons who furnish information under the FCRA.

Section 1681h(e) of FCRA provides, in relevant part:

Except as provided in sections 1681n and 1681o of this title, *no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against * * * any person who furnishes information to a consumer reporting agency*, based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action based in whole or in part on the report *except as to false information furnished with malice or willful intent to injure such consumer.*

15 U.S.C. § 1681h(e) (emphasis added). When FCRA was first enacted in 1968, this was the only preemption section in that statute. *Weseman v. Wells Fargo Home Morg., Inc.,* 2008 WL 542961 *2 (D. Or. Feb. 22, 2008). This provision "only preempts state claims for defamation, invasion of privacy and negligence, and only to the extent such claims are based on the disclosure of certain types of information and are not based on malice or willful intent to injure." *Id.* at *2.

In 1996, Congress amended the FCRA to add another, more general preemption provision. *Id.* Section 1681t(b)(1)(F) provides, in relevant part:

No requirement or prohibition may be imposed under the laws of any State--

(1) with respect to any subject matter regulated under--

* * *

(F)    section 1681s-2 relating to the responsibilities of persons who furnish information to consumer reporting agencies. . . .

Because Congress did not repeal or alter § 1681h(e) in 1996 when it added § 1681t(b)(1)(F), there is a tension between these two provisions that has not yet been resolved by the Ninth Circuit. *Weseman,* 2008 WL 5429561 at *3.  The court in *Weseman* noted that if §

Opinion and Order, Page 12

1681t(b)(1)(F) is construed to preempt *all* state law causes of action against credit information furnishers, whether statutory or common law, then § 1681h(e), which allows state law claims when plaintiff alleges malice or willful intent to injure, is superfluous and effectively repealed. *Id.*

The *Weseman* court acknowledged that the majority of district courts in the Ninth Circuit, as well as Judge Brown in this district, have adopted this "total preemption" approach, holding that § 1681t(b)(1)(F) precludes both statutory and common law claims against furnishers of information. *See, e.g., Cope v. MBNA Am. Bank, NA,* 2006 WL 655742, *9 (D. Or. March 8, 2006). Judge Stewart in *Weseman,* however, concluded that the "total preemption" approach violated a canon of statutory interpretation by allowing a general statute to trump a specific statute. *Id.* at *4. Judge Stewart, accordingly, adopted a "statutory approach," under which § 1681t(b)(1)(F) preempts only state law claims brought under state statutes, with § 1681h(e) applying to and preempting only state common law tort claims. *Id.*

Under this "statutory approach," to fall within the exception to § 1681h(e) for a defamation claim, a plaintiff must allege and prove that false information was furnished "with malice or willful intent to injure" the consumer. A willful act under FCRA is an act "done knowingly or intentionally, or is recklessly committed with a conscious disregard for the rights of others." *Harris v. Equifax Credit Info. Serv.,* 2003 WL 23962280 at *2-*3 (D. Or. 2003); *Severson v. Chase Manhattan Mortg. Co.,* 2011 WL 4443436 (D. Or. Aug. 26, 2011). The court agrees with Judge Stewart's "statutory approach" to preemption and concludes that Plaintiff's common law defamation claim, as alleged, is not preempted by the FCRA.

**2.      Merits**

Opinion and Order, Page 13

Defendants also move against Plaintiff's defamation claim on the merits. To make out a claim for defamation, Plaintiff must show that a defendant made a defamatory statement about the plaintiff to a third person. *Tubra v. Cooke,* 233 Or. App. 339, 347, 225 P.2d 862 (2010), *citing Wallulis v. Dymowski,* 323 Or. 337, 342-43, 918 P.2d 755 (1996). A defamatory statement is a false statement that would subject the plaintiff "to hatred, contempt or ridicule," or "tend to diminish the esteem, respect, goodwill or confidence in which the plaintiff is held," or "excite adverse, derogatory or unpleasant feelings or opinions against the plaintiff." *Tubra,* 233 Or. App. at 347, *quoting Farnsworth v. Hyde,* 266 Or. 236, 238, 512 P.2d 1003 (1973) (internal quotations, ellipses, and bracketed material omitted).

### a.     The BofA Defendants

Plaintiff alleges that BAC "asserted on a speaker phone in a call to Dr. Blair's office that his loan was "in bankruptcy." FAC ¶ 9.2(A). At oral argument, Plaintiff acknowledged that Plaintiff himself had put the call on speaker phone and that only his counsel might have been in the room with him and overheard the call. Plaintiff also alleges that BAC received "notice of dispute" by Plaintiff but "failed to reinvestigate and correct the disputed information." FAC ¶ 9.2(B). Plaintiff makes similar allegations at FAC ¶ 9.2(D). These allegations are insufficient to state a claim for defamation. Accordingly, Plaintiff's defamation claim against the BofA Defendants is dismissed with prejudice.

### b.     The Citibank Defendants

Against the Citibank Defendants, Plaintiff alleges, among other things, that "Sears Cards [*sic*] failed to adequately investigate and update the credit file to show the account as 'disputed'" and incorrectly "reported the accounts as 'closed by cardholder' though Plaintiff requested the

accounts be closed at the existing interest rate." FAC ¶ 9.2(C). These allegations are insufficient to state a claim for defamation.

Plaintiff, however, also alleges that the Citibank Defendants "asserted Dr. Blair was in bankruptcy and transmitted that information to [S&G]" and that the Citibank Defendants "further communicated to Northland on or about July 2010 that Willis Blair would likely attempt to evade service of process." FAC ¶¶ 9.2(E), (F). Plaintiff further alleges that these false communications "were repeated with improper motive, malice, and wilful intent to injure" Plaintiff. FAC ¶ 9.4.  The court concludes that the defamation claim against the Citibank Defendants, based on the allegations that there were false communications made to S&G and Northland that Plaintiff was in bankruptcy and would attempt to evade service of process, has been sufficiently stated. Accordingly, and to this extent only, the motion by the Citibank Defendants to dismiss Plaintiff's defamation claim against them is denied. Whether such a claim can withstand a motion for summary judgment, however, is not currently before the court.

## C.      Plaintiff's Fourth Claim:  FCRA

### 1.      The BofA and Citibank Defendants

The FCRA, § 1681s-2(a)(1)(A), prohibits the furnishing of information "relating to a consumer" to a credit reporting agency ("CRA") "if the person knows or consciously avoids knowing that the information is inaccurate." Under § 1681s-2(c) and (d), however, subsection (a) can be enforced *only* by federal agencies and certain state officials, not by private individuals. *Nelson v. Chase Manhattan Mortg. Corp.,* 282 F.3d 1057, 1059 (9th Cir. 2002). Plaintiff cannot assert a claim under this provision because he is a private individual.

Under § 1681s-2(b), if a CRA receives notice that a consumer disputes the accuracy of

information provided by the furnisher of the disputed information, the furnisher of the information has a duty to investigate and report the results of the investigation to any CRAs to which the furnisher previously gave the information. If the furnisher of the information fails to comply with any of these requirements, the consumer has the right to sue for damages. 15 U.S.C. §§ 1681n and o.

Plaintiff alleges in his FAC that he "disputed the information concerning the mortgage loan and CITIBANK and SEARS credit cards on or about August or September of 2010." FAC ¶ 10.7. Plaintiff alleges further that despite "notice of a consumer dispute," BAC Home Loans continued to "incorrectly report information without taking due care to reinvestigate the information" and that the Citibank Defendants "continued to report misleading information." *Id.* at ¶ 10.8.

These allegations fail to state a claim for violation of § 1681s-2(b), because such a claim requires the allegation that the furnisher of the information receive notice of the dispute from a CRA, not from the consumer. *See, e.g., Gorman v. Wolpoff & Abramson, LLP,* 584 F.3d 1147, 1154 (9th Cir. 2009) (duties of a furnisher under § 1681s-2(b)(1) "arise only after the furnisher receives notice of dispute from a CRA; notice of a dispute received directly from the consumer does not trigger furnishers' duties under subsection (b)"), *citing Nelson v. Chase Manhattan Mortgage Corp.,* 282 F.3d 1057, 1059-60 (9th Cir. 2002). *See also Thomas v. U.S. Bank, N.A.,* 2007 WL 764312 * 3 (D. Oregon, Mar. 8, 2007) ("Notice of a dispute received directly from the consumer does not trigger" duty of furnisher to investigate and report). Because Plaintiff has not alleged that Defendants received notice of the dispute from a CRA, rather than from himself, he does state a claim for violation of § 1681s-2(b).

Plaintiff also alleges that BAC Home Loans "incorrectly stated on a speaker phone to the office of Dr. Willis Blair" that Plaintiff had filed bankruptcy when he had not, and that Defendants "further relayed this information to credit reporting agencies in violation of the prohibition under the Act of furnishing information 'relating to a consumer' to a CRA 'if the person knows or consciously avoids knowing that the information is inaccurate.'" *Id.* at ¶ 10.10. This allegation pleads an element of § 1681s-2(a). As discussed, however, there is no private cause of action under that subsection. Plaintiff's claims against the BofA and Citibank Defendants under FCRA are dismissed with prejudice.

### 2.     S&G

S&G moves for summary judgment on Plaintiff's FCRA claim. S&G contends, first, that Plaintiff has shown no facts supporting the allegation that S&G is a furnisher of credit reporting nor any evidence that S&G furnished any information about Plaintiff to a credit reporting agency. *See McNall v. Credit Bureau,* 689 F. Supp.2d 1265, 1274-75 (D. Or. 2010) (in absence of evidence that the attorney retained by collection agency furnished any information to a CRA, the attorney is entitled to summary judgment on FCRA claim based on failure to report to credit bureaus that debt was disputed). S&G also challenges Plaintiff's allegation that by obtaining a copy of Plaintiff's credit report, S&G violated the FCRA. Plaintiff argues that S&G obtained that report for an impermissible purpose. Under 15 U.S.C. § 1681b(a)(3)(A), it is permissible to obtain a credit report either in connection with a credit transaction involving the consumer on whom the information is to be furnished or involving the extension of credit to, or review or collection of, an account of the consumer. *McNall*, 689 F. Supp.2d at 1273 (noting that "collection of an account" means collection of a debt, citing *Hasbun v. County of Los Angeles,*

323 F.3d 801, 803 (9th Cir. 2003)). The court finds both challenges made by S&G to be persuasive and grants S&G's motion for summary judgment against Plaintiff's FCRA claim.

**D.**      **Plaintiff's Fifth Claim:  FDCPA**

> **1.**      **The BofA and Citibank Defendants**

The BofA and Citibank Defendants challenge Plaintiff's fifth claim on the ground that they are not "debt collectors" and, therefore, cannot be liable for violations of the FDCPA, which prohibits abusive collection practices by debt collectors. The FDCPA defines "debt collector" as

> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be due another.

15 U.S.C. § 1692a(6). Under the FDCPA, exempted from the definition of "debt collector" is

> any person collecting or attempting to collect any debt owed or due or asserted owed or due another to the extent such activity . . . (ii) concerns a debt owed which was originated by such person . . .

15 U.S.C. § 1692a(6)(F)(ii). The definition also excludes "any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor." 15 U.S.C. § 1692a(6)(A). "Creditor" means "any person who offers or extends credit creating a debt or to whom a debt is owed." *Id.* at 1692a(4). A "debt collector," therefore, does not include a consumer's creditors. *Reed v. American Honda Fin. Corp.,* 2005 WL 1398214 *3 (D. Or. June 10, 2005). Nor are mortgage servicers debt collectors under the Act. *Stewart v. Mortg. Electronic. Registration. Sys. Inc.,* 2010 WL 1054384 *9 (D. Or. Feb. 18, 2010). Accordingly, Plaintiff's FDCPA claims against the BofA and Citibank Defendants are dismissed with prejudice.

> **2.**      **S&G**

S&G has filed a motion for summary judgment against Plaintiff's FDCPA claim, arguing

that Plaintiff has confused two distinct concepts under the FDCPA, debt "validation" and debt "verification." Under 15 U.S.C. § 1692g(a), within five days of any debt collector's initial communication to a consumer, the debt collector must send a "validation notice" containing certain specific information.

The FDCPA's "verification" requirement, on the other hand, is found in § 1692g(b) and provides as follows:

> (b) Disputed debts. If the consumer notifies the debt collector in writing within the 30-day period described in subsection (a) that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of the judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this title may continue during the 30-day period referred to in subsection (a) unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

S&G argues that, unlike the validation requirement, which occurs every time debt collection activities commence, the verification requirement is triggered only by a timely written request from the consumer.

In support of its motion for summary judgment, S&G has submitted the declaration of Nancy Smith, a partner with the S&G law firm. According to the Smith declaration, on May 26, 2010, Smith was asked by Citibank to begin collection efforts against Plaintiff. Smith Decl. ¶ 1. On June 1, 2010, Smith obtained a credit bureau report on Plaintiff, *id.* at ¶ 2, and on July 16, 2010, drafted a state court collections complaint against Plaintiff. *Id.* at ¶ 3, Ex. 1.

On July 16, 2010, Plaintiff learned from Citibank that his account had been referred to S&G. FAC ¶ 11.9. On July 26, 2010, Plaintiff left a voice mail message for Smith, telling her that she was "authorized to call" Plaintiff's counsel, Bonnie Marino-Blair, and that Plaintiff would be "filing a counterclaim" against a Mastercard creditor for "violation of my civil rights and numerous other consumer claims."Smith Decl. ¶ 4, Ex. 2. On August 2, 2010, Smith filed the Citibank complaint against Plaintiff. *Id.* at ¶ 5, ex. 3. On August 9, 2010, the Citibank complaint was served on Plaintiff. *Id.* at ¶ 6, Ex. 4. Along with the Summons and Complaint, Smith also had Plaintiff served with a FDCPA "validation notice." *Id.* at Ex. 5. This was Smith's first communication to Plaintiff. On August 9, 2010, Plaintiff called Smith to say he would be suing Citibank. *Id.* at ¶ 8. During that call, Plaintiff requested verification of the debt. *Id.* On August 11, 2010, Smith mailed a verification of the debt to Plaintiff, although she was not legally obligated to do so because Plaintiff's verification request was not in writing. *Id.* at ¶ 9.

Plaintiff alleges that Smith failed to "provide Dr. Willis G. Blair within five days of the Defendant's initial communication a validation notice." FAC 11.9(1). Smith's declaration refutes Plaintiff's allegation and presents a copy of the validation notice as Exhibit 5 to that declaration. Smith states in her declaration that the validation notice was served on plaintiff at the same time that Plaintiff was served with the Summons and Complaint, which was Smith's first communication to Plaintiff. Thus, S&G argues, the validation notice was both timely and in compliance with 15 U.S.C. § 1692g(a). Plaintiff offers no contrary evidence.

Plaintiff's second allegation in support of his claim against S&G is that Smith failed to "provide Dr. Willis G. Blair the current amount of the debt alleged within five days." FAC ¶ 11.9(2). S&G asserts that this alleged violation is also refuted by Exhibit 5, which shows that

Opinion and Order, Page 20

Smith provided the current amount of the debt as part of its validation notice. Plaintiff offers no contrary evidence.

Plaintiff's third allegation is that S&G violated the FDCPA by "continuing collection action in violation of 15 U.S.C. § 1692g despite Willis G. Blair's timely validation request." FAC ¶ 11.9(3). S&G points out that although Plaintiff uses the word "validation," he appears to mean "verification" because the obligation of a debt collector to suspend collection activities flows only from the debt collector's duty to send a verification of a debt under § 1692g(b). S&G argues that Plaintiff cannot establish liability under § 1692g(b) because he made no *written* request as required by the statute. *See Guerrero v. RJM Acquisitions LLC,* 499 F.3d 926, 934 (9th Cir. 2007) ("Section 1692g(b) of the Act requires a debt collector, who receives from a consumer *written notice* disputing a debt, to cease collection of the debt directly from the consumer until it has obtained either verification of the debt or a copy of a judgment and provided it to the consumer.") (Emphasis added.)

Plaintiff responds by contending that his July 26, 2010, voice mail message to Smith constituted an "initial communication" under 15 U.S.C. § 1692g(a), which triggered Smith's obligation to send a "validation notice" within five days of the voicemail. Neither side has cited a case analyzing whether a communication from the debtor constitutes an "initial communication" under § 1692g(a).[3] The statute itself, however, provides: "Within five days after the *initial communication with a consumer* in connection with the collection of any debt, a *debt collector shall . . .*" (emphasis added). The phrase "initial communication with a consumer,"

---

[3] The FDCPA defines "communication" as "the conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. § 1692a(2).

followed by the requirements imposed on the debt collector for such an initial communication,

suggests that the statute properly understood refers to and requires a communication that is

initiated by the debt collector, not a communication initiated by the consumer.

S&G cites *Camacho v. Bridgeport Financial, Inc.,* 430 F.3d 1078, 1079 (9th Cir. 2005)

("Under § 1692g(a), a debt collector must send a consumer debtor within five days of *its* initial

attempt to collect any debt, a written notice containing . . . ." (Emphasis added.) In addition,

several Ninth Circuit cases suggest that the referenced "initial communication" is one from the

debt collector to the consumer. *See, e.g., Terran v. Kaplan,* 109 F.3d 1428 (9th Cir. 1997)

(whether initial communication violates FDCPA depends on whether it is likely to deceive or

mislead a hypothetical least sophisticated debtor); *Mahon v. Credit Bureau of Placer County,*

*Inc.,* 171 F.3d 1197, 1201 (9th Cir. 1999) ( FDCPA validation of debt notice provision requires

only that notice be "sent" by a debt collector; debt collector need not also establish actual receipt

by debtor). The court concludes, therefore, that Plaintiff's voice mail to Ms. Smith was not an

"initial communication" under 15 U.S.C. § 1692g(a). Accordingly, S&G is entitled to summary

judgment against Plaintiff's FDCPA claim.

**E.    Plaintiff's Sixth Claim: Oregon's UDCPA**

**1.    The Citibank Defendants**

Oregon's UDCPA, Or. Rev. Stat. § 649.639(2)(a)-(o), makes fifteen debt collection

practices unlawful. One unlawful practice is "communicating with the debtor or any member of

the debtor's family repeatedly or at times known to be inconvenient." Defendants challenge

Plaintiff's claim under the Oregon UDCPA on the ground that none of Plaintiff's allegations

identify conduct prohibited by that statute.

Plaintiff, however, alleges that the Citibank Defendants engaged in abusive collection tactics by "continually calling both Dr. Blair and his spouse (who was not liable on the debts) at several phone numbers" and that the "harassment was so severe that it prompted" Plaintiff to write to Citibank requesting that they contact him only in writing. FAC ¶¶ 11.8(3), 12.1.

Under Oregon law, a commercial creditor attempting to enforce an obligation alleged to be owed to it by a consumer is acting as a debt collector for purposes of the UDCPA. *Porter v. Hill,* 314 Or. 86, 90, 838 P.2d 45, 48 (1992). The court concludes that Plaintiff's allegation is sufficient to state a claim against the Citibank Defendants under the Oregon UDCPA. Accordingly, the Citibank Defendants' motion to dismiss the UDCPA claim is denied. Whether such a claim can withstand a motion for summary judgment, however, is not currently before the court.

### 2.    The BofA Defendants

Plaintiff has not alleged against the BofA Defendants any conduct prohibited by the UDCPA. Plaintiff's UDCPA claim against the BofA Defendants is, therefore, dismissed with prejudice.

### 3.    S&G

Plaintiff has not alleged against S&G any conduct prohibited by the UDCPA. Plaintiff's UDCPA claim against S&G is, therefore, dismissed with prejudice.

In addition, S&G argues that Or. Rev. Stat. § 646.643 provides that a "debt collector who is subject to and in compliance with the requirements of the [FDCPA] shall also be considered to be in compliance with the requirements of ORS 646.639." S&G asserts that because Plaintiff cannot make out a claim against it under the FDCPA, S&G is similarly protected against

Plaintiff's claim under the UDCPA. The court agrees and grants summary judgment to S&G.

**F.     Plaintiff's Seventh Claim:  TILA and Regulation Z**

Regulation Z, promulgated by the Board of Governors of the Federal Reserve System ("Board") pursuant to its authority under TILA, 15 U.S.C. § 1601 *et seq.*, requires issuers of credit cards to provide cardholders with disclosure statements when the account is opened and when terms required to be disclosed are changed. *See Chase Bank USA, N.A. v. McCoy,* 131 S.Ct. 871 (2011).

The Citibank Defendants move against this claim on the ground that the allegations in the FAC merely "parrot the statutory language of TILA and Regulation Z or rely exclusively on conclusory allegations." Paragraph 13.5 of the FAC  alleges that "Defendants targeted Dr. Willis G. Blair for increase in interest rates and increased the interest rate by a formula or method which is not disclosed to cardholders and which they cannot or will not disclose to this day, contending it is 'proprietary.'" This allegation does not allege a nondisclosure in violation of TILA or Regulation Z. Plaintiff further alleges that no advance notice of an interest rate increase was given as required under Regulation Z, ¶13.6, and that Defendants violated the disclosure and rescission requirements of TILA and Regulation Z "in the following respects," and Plaintiff then simply recites the statute. *Id.* at ¶ 13.7. The court concludes that these allegations are merely "a formulaic recitation of the elements of a cause of action," without sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 129 S.Ct. at 1949. Plaintiff's claims under TILA and Regulation Z are dismissed with prejudice.

**G.      Plaintiff's Eighth Claim:  ECOA**

The ECOA makes it unlawful for "any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction . . . on the basis of race, color, religion, national origin, sex or marital status, or age," 15 U.S.C. § 1691(a)(1), or because "all or part of the applicant's income derives from any public assistance program." *Id.* at (a)(2). Although no Ninth Circuit opinion sets out the standards for stating a claim under ECOA, the Third, Fifth, Sixth, and Tenth Circuits have articulated a four-part test. *See, e.g., Chiang v. Veneman,* 385 F.3d 256, 259 (3d Cir. 2004); *Moore v. U.S. Dep't of Agric.*, 55 F.3d 991, 994 (5th Cir. 1995); *Mays v. Buckeye Rural Elec. Co-Op, Inc.,* 277 F.3d 873, 877 (6th Cir. 2002); *Matthiesen v. Banc One Mortg. Corp.,* 173 F.3d 1242, 1246 (10th Cir. 1999). The test has frequently been applied by district courts in this jurisdiction. *See, e.g., Hafiz v. Greenpoint Mortg. Funding, Inc.*, 652 F. Supp.2d 1039, 1045 (N.D. Cal. 2009); *Small v. Mortg. Electronic Registration Sys., Inc.*, 2010 WL 3719314 *10 (E. D. Cal. Sept. 16, 2010); *Sakugawa v. IndyMac Bank, F.S.B.,* 2010 WL 4909574 *4 (D. Hawaii Nov. 24, 2010); *Mashburn v. Wells Fargo Bank, N.A.,* 2011 WL 2940363 *5 (W.D. Wash. July 19, 2011).

The four elements of a claim under ECOA are that plaintiff:  (1) is a member of a protected class; (2) applied for credit; (3) was qualified for credit; and (4) was denied credit, despite being qualified. *See, e.g., Hafiz*, 652 F. Supp.2d at 1045. Defendants challenge Plaintiff's ECOA claim on the ground that he has not alleged facts satisfying any of the four requirements for an ECOA claim. Plaintiff is not a member of a class protected by the statute because he asserts a claim based on disability discrimination. He does not allege that he applied for credit, but only that he requested a "temporary extension/modification of loan terms." He has not

alleged that he was "qualified" for credit. And finally, he has not alleged that he was denied credit despite being qualified. The court concludes that Plaintiff has not stated a claim under the ECOA. This claim is dismissed with prejudice.

## H.    Plaintiff's Ninth Claim:  HPA

The HPA, 12 U.S.C. § 4902(a) provides for borrower cancellation of mortgage insurance if the mortgagor:

(1)    submits a request in writing to the servicer that cancellation be initiated;

(2)    has a good payment history with respect to the residential mortgage;

(3)    is current on the payments required by the terms of the residential mortgage transaction; and

(4)    has satisfied any requirement of the holder of the mortgage (as of the date of a request under paragraph (1) for–

   (A)    evidence (of a type established in advance and made known to the mortgagor by the servicer promptly upon receipt of a request under paragraph (1)) that the value of the property securing the mortgage has not declined below the original value of the property; and

   (B)    certification that the equity of the mortgagor in the residence securing the mortgage is unencumbered by a subordinate lien.

Plaintiff alleges that Countrywide, the original holder of his residential mortgage, solicited him for a refinancing in early 2008. *Id.* at ¶¶ 15.3, 15.5, 15.6. As part of the refinancing, Plaintiff received an appraisal of the property as of March 4, 2008. *Id.* at ¶ 15.6. Plaintiff alleges that he decided not to refinance, but did submit a request in writing for deletion of his private mortgage insurance ("PMI"), providing the appraisal as "proof of the adequate equity in the property." *Id.* at ¶ 15.8. When Bank of America acquired Countrywide, Plaintiff "renewed his requests" to the BofA Defendants. *Id.* Plaintiff claims that he renewed the request for PMI

deletion on multiple occasions, but each time was told he had to submit a new appraisal. *Id.* at ¶¶ 15.9, 15.10. Plaintiff alleges that the BofA Defendants "additionally violated" the HPA by "failing to send annual disclosure of the right to terminate." *Id.* at ¶ 15.11.

The BofA Defendants argue that Plaintiff's allegations fail to satisfy the statutory showing that he "satisfied any requirement of the holder of the mortgage" for evidence that the "value of the property securing the mortgage has not declined below the original value of the property." There is no allegation that Plaintiff ever obtained a new appraisal. Accordingly, Plaintiff's HPA claim is dismissed with prejudice on the ground that Plaintiff has not alleged that he provided the evidence required by subsection (4)(a).[4]

## I.      Plaintiff's Tenth Claim: Invasion of Privacy

The elements of a claim for invasion of privacy are: (1) the facts disclosed were private; (2) the defendant disclosed them to the public generally or to a large number of persons; and (3) the disclosure was in a form of publicity of a highly objectionable kind. *Flowers v. Bank of America,* 67 Or. App. 791, 794, 679 P.2d 1385 (1984), *citing Tollefson v. Price,* 247 Or. 398, 401, 430 P.2d 990 (1967). The court concludes that Plaintiff's invasion of privacy claim must be dismissed against on the ground that Plaintiff has not alleged the requisite element of disclosure to the public generally or to a large number of persons. Accordingly, Plaintiff's invasion of privacy claim is dismissed with prejudice.

In addition, Defendant S&G challenges Plaintiff's claim of invasion of privacy by stating that the conduct alleged against S&G is reviewing Plaintiff's credit report and a LexisNexis report. Because these reports were compiled from public records, S&G argues, they cannot

---

[4] At oral argument, the parties agreed that the PMI had recently been deleted.

constitute "private facts" for purposes of satisfying the first element of Plaintiff's claim of invasion of privacy. The court agrees and grants S&G's motion for summary judgment against Plaintiff's claim of invasion of privacy.

**J.      Plaintiff's Eleventh Claim:  Credit Card Act**

Plaintiff's claim under the Credit Card Act has the same deficiencies that are found in Plaintiff's Seventh Claim under TILA and Regulation Z. The court concludes that Plaintiff's allegations are merely "a formulaic recitation of the elements of a cause of action," without sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 129 S.Ct. at 1949. Plaintiff's claims under the Credit Card Act are dismissed with prejudice.

**K.      Plaintiff's Twelfth Claim:  Breach of the Implied Covenant of Good Faith**

Plaintiff alleges that the Defendants violated the implied covenant of good faith and fair dealing "in their servicing and collection activities." The doctrine of contractual good faith is designed to "effectuate the reasonable contractual expectations of the parties." *See, e.g., Best v. United States Nat'l Bank,* 303 Or. 557, 563, 739 P.2d 554, 558 (1987);  *Zygar v. Johnson,* 169 Or. App. 638, 645, 10 P.3d 326, 330 (2000); *Pride v. Exxon Corp.*, 911 F.2d 251, 256 (9th Cir. 1990)(applying Oregon law).  Plaintiff has not alleged the existence of a contract between himself and S&G. Nor has Plaintiff alleged the existence of a contract between himself and the BofA and Citibank Defendants whose terms would give rise to the reasonable expectation that these Defendants would offer disability insurance based on Plaintiff's medical condition, or that they would modify loans or forbear collecting on Plaintiff's debts, or that they would not refer delinquent accounts to a debt collector. The implied covenant cannot contradict an express contractual term or otherwise provide a remedy for an "unpleasantly motivated act that is

permitted expressly by the contract." *Zygar,* 169 Or. App. at 645, 10 P.3d at 330. Accordingly,

Plaintiff's claim for breach of the implied covenant of good faith is dismissed with prejudice.

### IV. CONCLUSION

The Motion to Dismiss by the Citibank Defendants (Dkt. 65) is DENIED as moot. The

Amended Motion to Dismiss by the Citibank Defendants (Dkt. 66) is GRANTED IN PART and

DENIED IN PART as follows: all claims against the Citibank Defendants are dismissed with

prejudice except for Plaintiff's claims of defamation and violation of the UDCPA. The Motion

for Summary Judgment by Defendant Smith & Greaves (Dkt. 67) is GRANTED. The Motion to

Dismiss by the BofA Defendants (Dkt. 70) is GRANTED. In addition, if Defendant Northland

has not entered an appearance by April 30, 2012, and if Plaintiff has not moved for default

against Northland by that date, the court will dismiss all claims against Northland without

prejudice for want of prosecution.

IT IS SO ORDERED.

Dated this 13th day of March, 2011.


　　　　　　　　　　　　　　 /s/ Michael H. Simon
　　　　　　　　　　　　　　　　Michael H. Simon
　　　　　　　　　　　　　　 United States District Judge